GARY M. RESTAINO
United States Attorney
District of Arizona

MATTHEW WILLIAMS
Assistant United States Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov
Attorneys for Plaintiff

GLENN S. LEON
Chief, Fraud Section
United States Department of Justice

JAMES V. HAYES
Assistant Chief
SARAH E. EDWARDS
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Email: James.Hayes@usdoj.gov
Email: Sarah.Edwards@usdoj.gov
Telephone: 202-774-4276
Attorneys for Plaintiff

FILED ___ LODGED
RECEIVED ___ COPY

JUN 18 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR PUBLIC DISCLOSURE

CR-24-1044-PHX-MTL (MTM)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>vs.<br><br>Rita Anagho,<br><br>           Defendant. | No.<br><br>**INDICTMENT**<br><br>VIO:  18 U.S.C. § 1349<br>(Conspiracy)<br>Count 1<br><br>18 U.S.C. §§ 1347 and 2<br>(Healthcare Fraud)<br>Counts 2–5<br><br>18 U.S.C. §§ 1957 and 2<br>(Transactional Money Laundering)<br>Counts 6-9<br><br>18 U.S.C. §§ 1518 and 2<br>(Obstructing a Health Care Fraud Investigation)<br>Count 10<br><br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(1)<br>21 U.S.C. § 853<br>28 U.S.C. § 2461(c)<br>Forfeiture Allegations |

**THE GRAND JURY CHARGES:**

At all times material to this indictment, within the District of Arizona and elsewhere:

**INTRODUCTION**

1.    Between on or about May 20, 2022, and on or about March 3, 2023, RITA ANAGHO, acting primarily though her company, Tusa Integrated Clinic LLC ("TUSA"), falsely and fraudulently billed the Arizona Health Care Cost Containment System ("AHCCCS") approximately $69.7 million for behavioral healthcare services, causing AHCCCS to pay TUSA approximately $55.4 million. ANAGHO primarily targeted AHCCCS's American Indian Health Program ("AIHP"), among other programs, and billed AHCCCS for services that were never provided and not provided as represented.

### Background on the Arizona Health Care Cost Containment System

2. AHCCCS is Arizona's Medicaid agency that offers health care programs to Arizona residents. AHCCCS contracts with several health plans to provide covered services and works with medical providers, such as doctors, hospitals, pharmacies, specialists, and counselors, to provide care for AHCCCS members. Covered services include, among other services, behavioral health counseling services, such as counseling and substance abuse treatment.

3. AHCCCS administers Medicaid health care programs to Arizona residents who meet certain income requirements. The federal government pays states for the majority of Medicaid program expenditures. Among other programs and plans, AHCCCS provides care through AIHP, through which AHCCCS-enrolled Native Americans may receive health care services, including preventive and behavioral health care services, on a fee-for-service basis.

4. All medical providers who serve AHCCCS members are required to be screened and enrolled as an approved provider before AHCCCS pays the provider for medical services provided to its members. For a medical professional to become a provider in the AHCCCS program, the provider must truthfully and accurately complete a provider enrollment paperwork package and submit it to AHCCCS. Officials at AHCCCS review such applications and, if they approve the application, the medical provider is then permitted to begin providing medical services to AHCCCS members and receive payments from AHCCCS for medical services rendered.

5. As part of their AHCCCS application, providers must fill out and sign a provider participation agreement that includes a certification in which they agree to abide by all laws, regulations, and policies governing AHCCCS. RITA ANAGHO filled out and signed the provider participation agreement and certification for TUSA, which was submitted on or about July 13, 2022.

6. After an approved AHCCCS provider provides services to an AHCCCS member, the provider typically submits a claim for payment through an online portal operated by AHCCCS. As part of such a claim submission, AHCCCS requires the provider to disclose the date services were provided, codes that reflect the type of services provided, as well as the total amount of reimbursement sought by the provider.

7. AHCCCS typically pays its providers either by check or by electronically transmitting funds to a bank account.

8. AHCCCS providers are required to be registered, and TUSA was registered under AHCCCS Provider ID ending x9406 and National Provider ID ending x4763.

9. AHCCCS was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b), and a "Federal health care program" as defined in Title 42, United States Code, Section 1320(a)-7b(f).

10. AHCCCS-covered services, including behavioral health services, must be medically necessary, cost effective, federally reimbursable, and state reimbursable. Arizona Administrative Code R9-22-202.

11. Outpatient behavioral health services are behavioral health services provided by an outpatient treatment center ("OTC"). OTC means a health care institution without inpatient beds that provides physical health services or behavioral health services for the diagnosis and treatment of patients. Arizona Administrative Code R9-10-101.

12. OTC services include therapy in the form of intensive outpatient services ("IOP") and outpatient services ("OP"). IOP and OP patients attend facilities on an ongoing basis where treatment is rendered, generally in the form of group and individual therapy sessions. The distinction among the two different treatment plans relates to, among other things, the amount of therapy time on a daily or weekly basis.

**Individuals and Entities Involved**

13. RITA ANAGHO resides in Arizona. ANAGHO directed the day-to-day operations of TUSA.

14. TUSA, an OTC, was organized in Arizona on or about May 20, 2022, as a domestic LLC providing "Health Care and Social Assistance." RITA ANAGHO was listed in the Arizona Corporation Commission documents as the sole member, principal, and organizer of TUSA. The address for TUSA was listed as **** South Rural Road, Tempe, Arizona, 85282.

15. TUSA applied to the Arizona Department of Health Services for a license as an OTC on or about May 20, 2022, and this application was received on or about June 3, 2022. RITA ANAGHO was listed as the Chief Administrative Officer for TUSA on this application. RITA ANAGHO signed this application as TUSA's owner. TUSA was licensed as an OTC effective on June 28, 2022.

16. Individual 1 was the owner and operator of Company 1. Individual 1 was listed as the statutory agent for TUSA on its application to be licensed as an OTC with the Arizona Department of Health Services.

17. Company 1 was organized in Arizona on or about August 5, 2021. According to its website, Company 1 provided credentialing and enrolling, medical coding, and billing services for medical practices. Company 1 provided such services for TUSA during the period of the conspiracy. Company 1 was listed as the statutory agent for TUSA in its formation documents.

18. Individual 2, who was a resident of Peoria, Arizona, worked at TUSA and owned Company 2.

19. Company 2 was organized in Arizona on or about June 10, 2021, as an LLC, and provided housing to addiction treatment patients who purportedly received therapy services from TUSA.

20. Individual 3, who was a resident of Laveen and Phoenix, Arizona, owned Company 3.

21. Company 3 was organized in Arizona on or about October 25, 2022, as an LLC, and provided housing to addiction treatment patients who purportedly received

therapy services from multiple OTCs, including TUSA.

22. Individual 4, who was a resident of Tempe, Arizona, worked at TUSA, and was a signatory on several corporate bank accounts for TUSA.

23. Individual 5, who was a resident of Phoenix, Arizona, worked at TUSA.

24. Individual 6, who was a resident of Phoenix, Arizona, worked at TUSA.

**Investigation into Widespread AHCCCS Fraud**

25. The AHCCCS Office of Inspector General ("OIG") began investigating a widespread fraud in which residential and outpatient treatment centers recruited Native Americans and other individuals to exploit the AIHP under AHCCCS. Because it was easier to enroll as a provider with AIHP than some other AHCCCS insurance programs, and because AIHP's reimbursement rates for certain behavioral health services were sometimes higher than those of other programs, these treatment centers preferred patients who were enrolled in AIHP. In some cases, these treatment centers identified potential patients and enrolled the patients in AIHP or had the patients switch their existing AHCCCS insurance plan to AIHP, regardless of whether the patient was Native American.

**Funds Received from AHCCCS**

26. TUSA's corporate bank accounts for the relevant period were three J.P. Morgan Chase accounts ending x2208, x2216, and x3092, and one Bank of America account ending x3081. Bank records show deposits of approximately $55.4 million in income from AHCCCS programs during the relevant period. RITA ANAGHO and Individual 4 were the sole signatories on these bank accounts.

27. RITA ANAGHO controlled the $55.4 million TUSA received from AHCCCS during the relevant period. ANAGHO paid approximately $30 million in illegal kickbacks to various residences whose owners and managers in turn caused the residents to purportedly attend treatment at TUSA. ANAGHO used the funds to purchase, among other things, approximately $1.3 million in residential real estate, a hospital for approximately $5.8 million, and over $275,000 in vehicles and related expenses.

Approximately $200,000 was spent on retail purchases, travel, and at casinos. Individual 4, who was also a signatory on TUSA's corporate accounts, spent over $415,000 on vehicles and related expenses, and over $230,000 on retail purchases and travel.

## COUNT 1
### Conspiracy
### (18 U.S.C. § 1349)

28. The factual allegations above are incorporated for Count 1.

29. Beginning at a time unknown to the grand jury, but at least as early as on or about May 20, 2022, and continuing to on or about March 3, 2023, in the District of Arizona and elsewhere, Defendant RITA ANAGHO and Individual 1, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, knowingly and willfully agreed and conspired with each other and others to commit the following offenses against the United States: wire fraud, in violation of 18 U.S.C. § 1343; and health care fraud, in violation of 18 U.S.C. § 1347.

**Purpose of the Conspiracy**

30. It was a purpose of the conspiracy for the Defendant, Individual 1, and their co-conspirators to unjustly enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to AHCCCS; (b) concealing the submission of false and fraudulent claims to AHCCCS, and the receipt and transfer of fraud proceeds; and (c) diverting the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

**Manner and Means of the Conspiracy and Scheme**

31. The manner and means used by Defendant, Individual 1, and others, individually and through the entities described above, to effect the objects of the conspiracy and scheme to defraud, included the following:

a. RITA ANAGHO established, operated, and controlled TUSA, an OTC, which was purportedly in the business of providing addiction treatment services for persons suffering from alcohol and drug addiction.

b. To obtain and retain patients for TUSA whose insurance, including AHCCCS, could be billed for substance abuse treatment services such as IOP and OP, RITA ANAGHO and her co-conspirators offered and paid illegal kickbacks and bribes to owners of residences that housed substance abuse treatment patients, including but not limited to Individual 2 and Individual 3, in exchange for these residence owners referring patients for treatment to TUSA. Many of the patients recruited for TUSA in this manner were Native Americans and/or other individuals who were enrolled in AIHP.

c. RITA ANAGHO and her co-conspirators paid illegal kickbacks and bribes that varied based on the volume and value of the referred patients, including paying more money to the residence owners, including but not limited to Individual 2 and Individual 3, in exchange for patients with AIHP insurance compared to patients with other plans because the reimbursement from AHCCCS for these patients was generally higher.

d. RITA ANAGHO, Individual 1, and their co-conspirators submitted and caused others to submit, via interstate wire communications, false and fraudulent claims to AHCCCS for behavioral health substance abuse treatment therapy services that were not provided, were not provided as billed, were not provided by qualified personnel, were so substandard that they failed to serve a treatment purpose, were not used or integrated into any treatment plan, and/or were medically unnecessary.

e. RITA ANAGHO, Individual 1, and their co-conspirators falsified and altered, and caused the falsification and alteration, of TUSA therapy notes reflecting that TUSA's patients attended therapy when they did not and/or reflecting that

therapy was provided when it was not.

      f.    RITA ANAGHO, Individual 1, and their co-conspirators submitted and caused the submission to AHCCCS, via interstate wire communications, of false and fraudulent claims in the amount of approximately $69,692,496 for services that were procured through the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented. AHCCCS paid the approximate amount of $55,368,889 to TUSA's corporate accounts for these false and fraudulent claims.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2-5
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

32.    The factual allegations above are incorporated for Counts 2-5.

33.    Between at least as early as May 20, 2022, and continuing through at least as late as March 3, 2023, in the District of Arizona and elsewhere, Defendant RITA ANAGHO and Individual 1, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program and to obtain by means of false or fraudulent pretenses, representations, and promises, money and property owned by and under the custody or control of a health care benefit program, to wit: AHCCCS, in connection with the delivery of and payment for health care benefits, items, and services.

34.    On or about the dates below, RITA ANAGHO and Individual 1 submitted and caused to be submitted to AHCCCS the following examples of fraudulent billings related to TUSA, with each instance serving as a separate Indictment count:

| Ct | Patient | Approx. Date Submitted | Approx. Amount Billed | Approx. Amount Paid | Date of Service | Claim Numbers |
|---|---|---|---|---|---|---|
| 2 | T.Y. | 12/15/2022 | $1,220 | $1,220 | 12/12/2022 | 223495601472001-005 |
| 3 | A.M. | 1/27/2023 | $1,220 | $1,220 | 1/23/2023 | 230275601918001-005 |
| 4 | C.S. | 1/30/2023 | $1,220 | $1,220 | 1/23/2023 | 230305600056001-005 |
| 5 | J.P. | 2/13/2023 | $1,220 | $1,220 | 1/27/2023 | 230445603580001-005 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

## COUNTS 6-9
### Transactional Money Laundering
### (18 U.S.C. §§ 1957 and 2)

35. The factual allegations above are incorporated for Counts 6-9.

36. On the dates listed below, RITA ANAGHO, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, in the District of Arizona and elsewhere, knowingly engaged and attempted to engage in the following transactions in the United States with criminally derived property of a value exceeding $10,000, derived from specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343, health care fraud, in violation of Title 18, United States Code, Section 1347, and conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349:

| Ct | Approx. Date | Approx. Amount | Transaction (JP Morgan Chase) |
|---|---|---|---|
| 6 | 1/2/2023 | $34,915 | ANAGHO wrote a check from #2208 to a car dealership |
| 7 | 3/9/2023 | $50,000 | ANAGHO withdrew cash from #2208 |

- 10 -

| Ct | Approx. Date | Approx. Amount | Transaction (JP Morgan Chase) |
|---|---|---|---|
| 8 | 4/21/2023 | $5.8 million | ANAGHO wired funds from a holding account she controlled #8158 to a title company to purchase a hospital. |
| 9 | 6/2/2023 | $1.3 million | ANAGHO purchased a home in the name of Individual 4 with funds from #2208. |

Each in violation of 18 U.S.C. §§ 1957 and 2.

## COUNT 10
### Obstruction of a Criminal Health Care Fraud Investigation
### (18 U.S.C. §§ 1518 and 2)

37. The factual allegations above are incorporated by reference for Count 10.

38. On or about February 1, 2024, in the District of Arizona and elsewhere, RITA ANAGHO did willfully prevent, obstruct, mislead, and delay, and attempt to willfully prevent, obstruct, mislead, and delay the communication of information and records relating to a violation of a Federal health care offense to a criminal investigator, by sending an email instructing Individual 5 and Individual 6 to create false therapy notes for sessions they did not conduct in 2023, which Defendant RITA ANAGHO knew to be false, to be included in patient files to be produced in response to a federal grand jury subpoena requesting patient files from TUSA.

This was in violation of 18 U.S.C. §§ 1518 and 2.

## FORFEITURE ALLEGATIONS

39. The factual allegations above are incorporated for forfeiture. The grand jury further realleges and incorporates the allegations of Counts 1 through 10 of this indictment, which are incorporated by reference as though fully set forth herein.

40. Pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), upon conviction of one or more of the offenses alleged in counts 1 through 10

above, Defendant ANAGHO shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or in any property traceable to such property involved in the offense(s), including the following: (a) all money or other property that was the subject of each transaction or transfer in violation of a statute listed in 18 U.S.C. § 982; (b) all other property constituting proceeds obtained as a result of those violations; and (c) all property used in any manner or part to commit or to facilitate the commission of those violations. Such property includes, but is not limited to, a sum of money equal to at least $55.4 million in U.S. currency, representing the amount of proceeds involved in the offenses, and the specific property named below.

    a. All that lot or parcels of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 450 West Adamsville Road, Florence, Arizona 85132 and more particularly described as Pinal County, Arizona Assessor's Parcel Number (APN) 202-10-010A, a parcel of land approximately 7.92 acres and a building of approximately 87,598 square feet

    b. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 3338 West Silverdale Road, Queen Creek, Arizona 85142 and more particularly described as Pinal County Arizona APN 509-20-012K, a parcel of land approximately 3.30 acres and a building of approximately 4,623 square feet

    c. $131,587.75 in funds seized from JPMorgan Chase account number ending in x2208

    d. $34,076.10 in funds seized from JPMorgan Chase account number ending in x2216

    e. $174,653.82 in funds seized from JPMorgan Chase account number ending in x3092

    f. $4,350,958.17 in funds seized from JPMorgan Chase account number ending

|   |   |   |
|---|---|---|
| 1 |    | in x3801 |
| 2 | g. | $4,425,518.38 in funds seized from JPMorgan Chase account number ending |
| 3 |    | in x0731 |
| 4 | h. | $2,911.07 in funds seized from JPMorgan Chase account number ending in |
| 5 |    | x2679 |
| 6 | i. | $550,165.98 in funds seized from JPMorgan Chase account number ending |
| 7 |    | in x8158 |

41. If any of the forfeitable property, as a result of any act or omission by any Defendant,

    a. cannot be located upon the exercise of due diligence,

    b. has been transferred, sold to, or deposited with a third party,

    c. has been placed beyond the jurisdiction of the court,

    d. had been substantially diminished in value, or

    e. has been commingled with other property and cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of that Defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

/s/
FOREPERSON OF THE GRAND JURY
Date: June 18, 2024

GARY M. RESTAINO
United States Attorney
District of Arizona

/s/
MATTHEW WILLIAMS
Assistant U.S. Attorney

GLENN S. LEON
Chief, Fraud Section

- 13 -

United States Department of Justice

   /s/
JAMES V. HAYES
Assistant Chief
SARAH E. EDWARDS
Trial Attorney